**SCHLICHTER & SHONACK, LLP**
WILLIAM A. PERCY, Bar No. 297325
2381 Rosecrans Avenue, Suite 326
El Segundo, CA 90245
Telephone: (310) 643-0111
Fax: (310) 643-1638
[Additional counsel on signature page]

*Attorney for Plaintiff Terry Fabricant and
the Proposed Class*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY FABRICANT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAVVE MARKETING CORP and THE FEDERAL SAVINGS BANK<br><br>Defendants. | COMPLAINT FOR:<br>  1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)<br>  2. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(c)<br><br>Class Action<br><br>DEMAND FOR JURY TRIAL |

Plaintiff TERRY FABRICANT ("Plaintiff"), by his undersigned counsel, for this class action complaint against Defendants THE FEDERAL SAVINGS BANK and WAVVE MARKETING GROUP and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Defendants"), alleges as follows:

## I.      INTRODUCTION

1.      <u>Nature of Action</u>.  Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs.*, *LLC*, 132 S. Ct. 740, 745 (2012).

## II.      PARTIES

2.      Plaintiff Terry Fabricant is an individual residing in California, in this Central District.

3.      The Federal Savings Bank is a federally chartered bank that is licensed to do business in all 50 states, including California. It has its headquarters in Illinois, but has a Loan Production Office in Irvine, CA. It does business in California and throughout the United States, including using third parties to solicit potential customers in California, as it did with the Plaintiff.

4.      Defendant Wavve Marketing Group is a Maryland corporation hired by Federal Savings that makes automated telemarketing calls, such as those made to the Plaintiff. Wavve Marketing Group regularly conducts business in this District, including through the making of telemarketing calls, as it did with the Plaintiff.

### III.          JURISDICTION AND VENUE

5.      <u>Jurisdiction</u>.  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because they arise under a law of the United States: 47 U.S.C. § 227.

6.      <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Defendants because the challenged calls at the heart of this case were directed into California. Furthermore, Federal Savings' regularly does business in this location and has a Loan Production Office in Irvine, CA, which was used to try to solicit Mr. Fabricant's business.

7.      <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff resides in this District and the challenged calls at the heart of this case were directed by Defendants into this District.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.                THE TELEPHONE CONSUMER PROTECTION ACT OF 1991,

## 47 U.S.C. § 227

8.      The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

9.      Relevantly, the TCPA provides private rights of action for two types of telemarketing-related conduct.

10.     First, Section 227(b) of the TCPA prohibits initiating a telemarketing call using an automatic telephone dialing system or pre-recorded message without the prior express written consent of the called party.

11.     "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(8).

12.     This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(i)(A-B).

13.     A violation of § 227(b) carries statutory damages of $500 to $1,500 per call.

14.     Second, § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15.     In this rulemaking proceeding, the FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

16.     Pursuant to this statutory mandate, the FCC issued two relevant regulations.

17.     The first regulation to be issued under § 227(c) established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

18.     The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

19.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

20.    These procedures are codified at 47 CFR 64.1200(d)(1)-(7).

21.    Specifically, § 64.1200(d) requires a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

22.    These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

23.    Accordingly, all telemarketing calls violate the TCPA unless Defendant can demonstrate that it has implemented the required policies and procedures.

24.    Consent is irrelevant to § 64.1200(d).

25.    A violation of § 227(c) through 47 C.F.R. § 64.1200(d) carries statutory damages of $500 to $1,500 per call.

COMPLAINT
*Fabricant v. The Federal Savings Bank, et. al.*

26.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

27.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited October 17, 2019). YouMail estimates that 2019 robocall totals exceeded 60 billion. *See id.*

## V.     FACTUAL ALLEGATIONS

28.     Federal Savings is a federally chartered bank that focuses on mortgage loan origination and refinancing.

29.     However, Federal Savings' contact with the potential new customers is limited, and the telemarketing is conducted by third parties, such as Wavve.

30.     Defendants' strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

31.     Recipients of these calls, including Plaintiff, did not consent to receive them.

32.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

The Automated Telemarketing Call From Defendants

33.    Plaintiff's telephone number, (818)-266-XXXX, is registered to a cellular telephone service, which is the number he received the call on.

34.    It has been on the National Do Not Call Registry since 2008.

35.    The Plaintiff has received at least seven automated telemarketing calls from Wavve on behalf of Federal Savings.

36.    These calls were on December 16 and 17, 2020 and January 6, 7 and 28, 2020.

37.    The caller ID showed the telephone call was from (818)-740-6932.

38.    During at least one of the December calls the Plaintiff asked to no longer be contacted.

39.    However, the Plaintiff's number was not added to Wavve's Do Not Call list.

40.    As such, Wavve does not appear to have a Do Not Call list.

41.    Alternatively, Wavve does not train its employees and personnel on the use of a Do Not Call list.

42.    Yet the calls continued.

43.    The calls all followed a similar pattern.

44.    Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

45.     The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

46.     The dialing system used by Wavve also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

47.     Loading a list of telephone numbers into the dialing system and pressing a single command does this.

48.     As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

49.     The dialing system can do this by inputting a straightforward computer command.

50.     Following that command, the dialing system will sequentially dial numbers.

51.     First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

52.     This would be done without any human intervention or further effort.

53.     Mr. Fabricant eventually engaged the telemarketer during the January 28, 2020 telemarketing call to identify them.

54.     The salesperson asked the Plaintiff a series of financial questions regarding a mortgage.

55.     The Plaintiff asked for an e-mail so he could identify the company he was doing business with.

56.     The salesperson from Wavve claimed that they could not do that, but that the individual that he transferred the Plaintiff to could.

57.     As a result, the Plaintiff allowed for the transfer.

58.     The Plaintiff was transferred to Arthur Ortega.

59.     Mr. Ortega is a mortgage banker with the Federal Savings Bank.

60.     Mr. Ortega sent an e-mail with the subject line "Arthur Ortega - The Federal Savings Bank - Contact Information NMLS #333070".

61.     The e-mail came form "aortega@thefederalsavingsbank.com".

62.     Mr. Ortega continued to offer The Federal Savings Bank services on the call.

63.     The Plaintiff ended the call as he had sufficiently identified the company as The Federal Savings Bank.

64.     The calls were not necessitated by an emergency.

65.     Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

66.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.  The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

## VI. THE FEDERAL SAVINGS'S LIABILITY AND ITS ARRANGEMENT WITH WAVVE MARKETING GROUP

67.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

68.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

COMPLAINT
*Fabricant v. The Federal Savings Bank, et. al.*

69.     In that ruling, the FCC instructed that sellers such as Federal Savings may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy." *May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

70.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

71.     Wavve was contractually required to promote Federal Savings products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

72.     Federal Savings knew that Wavve was making automated telemarketing calls.

73.     Federal Savings was knowingly and actively accepting the business that originated through the illegal telemarketing calls.

74.     In fact, as described above, it actively participated in the January 28, 2020 call to the Plaintiff.

75.     By engaging Wavve to make calls on behalf of its agents to generate new business, Federal Savings "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

76.     Moreover, Federal Savings maintained interim control over Wavve's actions.

77.     For example, Federal Savings had absolute control over whether, and under what circumstances, it would accept a customer.

78.     Furthermore, Federal Savings had day-to-day control over Wavve's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Federal Savings. Federal Savings failed to make such an instruction to Wavve, and as a result, is liable for Wavve's conduct.

79.     Federal Savings also gave interim instructions to Wavve by providing the volume of calling and leads it would purchase.

80.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## VII.     CLASS ACTION ALLEGATIONS

81.     <u>Class Definition</u>.  Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the following classes:

All persons to whom: (a) Defendants' or a third party acting on their behalf made one or more non-emergency telephone calls; (b) promoting Defendants' goods or services; (c) to a cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or

prerecorded voice; (e) at any time in the period that begins four years before the date of filing the original complaint in this case and ends at the date of trial.

("Dialer Class")

All persons to whom: (a) Defendants' or a third party acting on their behalf; (b) placed (or had placed on its behalf) two or more telemarketing telephone calls in a 12-month period; (c) promoting Defendants' goods or services; (d) at any time in the period that begins four years before the date of filing the original complaint in this case and ends at the date of trial.

("Policy Class")

82.  Exclusions. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, the judges to whom this case is assigned and the legal representatives, assignees, and successors and immediate family members of all of the foregoing.

83.  Numerosity. The Class is so numerous that joinder of all its members is impracticable.  On information and belief, the Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

84.     <u>Commonality</u>. The key questions driving the outcome of this dispute have the same answers for all Class members. Those questions include, but are not limited to, the following:

a.      Whether Defendants used an ATDS, as defined by *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018);

b.      Whether Defendants purchased batches of leads of prospects who had not consented to be called by it;

c.      Whether Federal Savings is vicariously liable for the conduct of Wavve.

d.      Whether Defendants' violations of the TCPA were knowing and willful; and

e.      Whether Defendants should be enjoined from engaging in similar telemarketing in the future.

85.     <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims and those of the Classes arise out of the same course of conduct by Defendants and are based on the same legal and remedial theories.

86.     <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable counsel with experience in TCPA class litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to

do so.  Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the proposed Classes.

87.   _Predominance_. Defendants have engaged in a common course of conduct toward Plaintiff and members of the Classes. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important advantages, including judicial economy.

88.   _Superiority_. A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are dwarfed by the cost of prosecution. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated and because the TCPA lays down bright-line standards for liability and damages. Class treatment is superior to thousands of individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants

and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

89.     Only 1 in 7 million robocalls results in the filing of a federal TCPA suit. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-fordec-2017-year-in-review/ (4,392 TCPA complaints). Except to the extent that they are remedied by class actions, the other 6,999,999 are made with impunity.

90.     <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

91.     <u>Notice</u>. Plaintiff anticipates that the mailing address and/or electronic mailing address of Class members will be obtained during discovery from Defendants' calling records (potentially in conjunction with third-party databases that map phone numbers to such addresses). Plaintiff anticipates that Class counsel will notify Class members in writing at such addresses.

COMPLAINT
*Fabricant v. The Federal Savings Bank, et. al.*

## VIII. FIRST CLAIM FOR RELIEF

### Violations of the TCPA, 47 U.S.C. § 227(b)

### (On Behalf of Plaintiff and the Dialer Class)

92.     Plaintiff and the proposed Dialer Class incorporate the foregoing allegations as if fully set forth herein.

93.     Wavve placed numerous calls for telemarketing purposes for The Federal Savings Bank to Plaintiff's and Dialer Class Members' cellular telephone numbers.

94.     Wavve did so using an automatic telephone dialing system.

95.     Defendant did so without the prior express written consent of Plaintiff and Dialer Class Members.

96.     Plaintiff and Dialer Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(b)(3), in addition to and separate from any award related to Defendant's failure to maintain policies and procedures for an internal do-not-call list.

97.     Plaintiff and Dialer Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, in addition to and separate from any award related to Defendant's failure to maintain policies and procedures for an internal do-not-call list, because Defendant's violations were knowing and/or willful.

# IX. SECOND CLAIM FOR RELIEF

## Violations of the TCPA, 47 U.S.C. § 227(c)

## (On Behalf of Plaintiff and the Policy Class)

98.     Plaintiff and the proposed Policy Class incorporate the foregoing allegations as if fully set forth herein.

99.     Wavve placed numerous calls for telemarketing purposes to Plaintiff's and Policy Class Members' telephone numbers for The Federal Savings Bank.

100.    Wavve did so despite not having a written policy pertaining to "do not call" requests.

101.    Wavve did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

102.    Wavve did so despite not recording or honoring "do not call" requests.

103.    Wavve placed two or more telephone calls to Plaintiff and Policy Class Members in a 12-month period.

104.    Wavve is entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

105.    Plaintiff and Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call because Defendant's violations were knowing and/or willful.

## X.        PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against Defendants as follows:

A.      Certification of the proposed Classes;

B.      Appointment of Plaintiff as representative of the Classes;

C.      Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that actions complained of herein by Defendants and/or its affiliates, agents, or related entities violate the TCPA;

E.      An order enjoining Defendants and its affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

F.      An award to Plaintiff and the Classes of damages, as allowed by law;

G.      An award to Plaintiff and the Classes of attorney's fees and costs, as allowed by law and/or equity;

H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

I.      Orders granting such other and further relief as the Court deems necessary, just and proper.

## XI.        DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

1

2  Dated: February 19, 2020                     Respectfully Submitted,
                                                SCHLICHTER & SHONACK, LLP
3

4                                               */s/ William A. Percy*
                                                By: WILLIAM A. PERCY
5                                               *Attorney for Plaintiff*
                                                *Terry Fabricant and the Proposed Class*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -

COMPLAINT

*Fabricant v. The Federal Savings Bank, et. al.*